<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TONY M.,**<br><br>　　　　　*Plaintiff,*<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　　　*Defendant.* | Civil Action No. 23-736<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Plaintiff Tony M.'s ("Plaintiff") request for review of Administrative Law Judge Gina Pesaresi's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3); 42 U.S.C. § 423; and 405(g). For the reasons set forth in this Opinion, the decision by the Commissioner of Social Security ("Commissioner") is **AFFIRMED.**

**I.　STANDARD OF REVIEW AND APPLICABLE LAW**

　**A.　Standard of Review**

This Court has jurisdiction to review final decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). The Commissioner's application of law is subject to plenary review, but factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

1

(1971). As such, substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). This is a deferential standard and places a significant limitation upon the District Court's scope of review, prohibiting the Court from re-weighing evidence or imposing its own factual determination. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).

To determine whether there is substantial evidence to support the Commissioner's decision, this Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

The ALJ must explain their reasoning such that the final determination is amenable to meaningful review. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held, however, that an ALJ need not use particular language or adhere to a particular format when conducting their analysis, as long as there is "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920.

First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then they are not disabled, and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

II.  **BACKGROUND**

A. **Background and Medical History**

In January 2020, Plaintiff filed for supplemental security income ("SSI"), alleging that he became disabled in September of 2019.  Tr. 129, 136.  The state agency denied his application—first at the initial stage, in May 2020, and later, at the reconsideration level of review, in August 2020.  Id. at 54–58; 66–67.  Plaintiff testified at a hearing before an ALJ in August 2021.  Id. at 25–43.  The ALJ, on September 13, 2021, issued a decision finding that Plaintiff had not been disabled since January 22, 2020—the date he filed for SSI.  Id. at 13–19.  On December 9, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision final.  Id. at 1–4.

Plaintiff was 55 years old in September 2019, at the time of the alleged onset of his disability, and 57 at the time of his administrative hearing.  Id. at 31.  In his original January 2020 SSI application, Plaintiff alleged that he was disabled because of problems with his feet.  Id. at 44, 51.  Prior to his alleged disability, Plaintiff was a forklift driver working for a construction company.  Id. at 155–56.  A vocational expert classified his role as an "industrial truck operator," which requires performance at the "medium exertion level."  Id. at 42.

Plaintiff, in November 2019, visited Dr. Elaine Mariolis because of pain in his right foot caused by a wart and a hammertoe.  Id. at 241–42.  Dr. Mariolis reported that Plaintiff had a "[h]ammertoe deformity present on fourth digit right with hyper kertotic lesion" with a history of burning and paresthesia on both feet.  Id. at 241.  Plaintiff subsequently underwent aseptic debridement of the right foot lesion and was prescribed a spacer.  Id. at 244–45.  In January 2020, Dr. Mariolis reported that Plaintiff's wart was resolved and that he deferred getting hammertoe surgery.  Id. at 248, 250.  That January, Plaintiff also saw Nurse Susan T. Riley for back pain, id.

at 227, 231, 233, who prescribed him cyclobenzaprine and naproxen.  Id. at 232.  Thereafter, Plaintiff reported that with the muscle relaxer, he woke up pain free.  Id. at 228.

Plaintiff then had bunion surgery on both of his feet.  Id. at 290, 408.  In November 2020, Dr. John Del Monte performed a left bunionectomy, after which, in December, Plaintiff had no complaints and a steady gait.  Id. at 408–10, 425.  In March 2021, Plaintiff had the same surgery on his right foot.  Id. at 276, 358–60.  On March 29, 2021, during a follow up visit, Plaintiff had a broken lateral cortex, but his hardware was intact.  Id. at 417.  At the appointment, he was not on crutches as instructed by his doctor.  Id.  During a follow up visit in April, Plaintiff was bearing full weight on his foot and did not complain of any pain or discomfort.  Id. at 414.  Although a hinge on the lateral aspect broke, Plaintiff's surgery was not affected.  Id.  By August, Plaintiff was wearing sneakers, had no complaints of pain or discomfort, and was doing a range of motion exercises.  Id. at 412.  Dr. Del Monte's post-surgical report stated that the Plaintiff's "[p]ain is present, but should only prevent [him] from performing normal, full-time work activities on an occasion (approximately 3-4 days per month) basis."  Id. at 433.  According to post-operative treatment notes from October 28, 2020 through August 9, 2021, Plaintiff was not disabled.  Id. at 403–04, 412–28.

### B. Hearing Testimony

During his hearing, Plaintiff testified that he lived in a drug and alcohol treatment home with other individuals, spent a typical day sitting on a couch, did not need help caring for himself, did not have to cook or clean (as the program had staff for chores), and would take Ubers in order to travel to medical appointments.  Id. at 39–40.  He explained that prior to his bunionectomies, he could walk only one block and could stand only for 20 minutes at a time.  Id. at 34.  But, after the surgeries—which Plaintiff reported provided some relief—he could stand for 30 minutes, and he

could walk the most required of him in a given day: one block. Id. at 35–36. Following the surgeries, Plaintiff reported walking with an unprescribed cane (as opposed to the prescribed crutches) and that he was given Naproxen for pain, but he could not take anything stronger because of his history of opioid addiction. Id. at 35, 37–38.

Robert Baker, a vocational expert, also testified at the hearing. Id. at 41. He stated that an individual limited to light work with postural limitations would not be able to perform Plaintiff's prior work as an industrial truck operator and that such work did not involve transferable skills for work in occupations at the light level. Id. at 42.

### C. ALJ Decision

On September 13, 2021, Administrative Law Judge Gina Pesaresi issued a decision finding that since January 22, 2020, the date Plaintiff filed for SSI, he "has not been under a disability" as defined by section 1614(a)(3)(A) of the Social Security Act. Id. at 13–19. As an initial matter, and as part of the Step One analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2020. Id. at 15. The ALJ resolved the claims at Step Two of the analysis, finding that,

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments[.]

Id. at 16 (emphasis added). In reaching this conclusion, the ALJ found that Plaintiff had certain medically determinable impairments: "opioid dependence in remission; status post wart debridements; and status post bilateral bunion surgeries." Id. at 15. The ALJ also found that Plaintiff had a non-medically determinable impairment of "lower back pain." Id. at 15. The ALJ provided a summary of Plaintiff's medical record and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms;

however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." Id. at 18. As part of the record, the ALJ also relied on reports from Plaintiff's podiatrist, which relayed that he was not disabled. Id. at 18. The ALJ noted that the podiatrist's September 2021 assessment that Plaintiff "would miss four days of work a month and is capable of only sedentary exertion" was inconsistent with "podiatric treatment records showing that [Plaintiff's] foot pain and minimal functional limitations have resolved as a result of years of treatment and bilateral foot surgeries." Id. at 19.

## III. ANALYSIS

Plaintiff argues that the ALJ erred by concluding the sequential analysis at Step Two, finding that Plaintiff's impairments were not severe. For the reasons explained below, the Court disagrees with Plaintiff.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

> An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *6-7. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. See Bowen, 482 U.S. at 158 (O'Connor, J., concurring). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. See Smolen v. Chater, 80 F.3d 1273, 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Newell, 347 F.3d at 546; see also McCrea, 370 F.3d at 360 (3d Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been

7

made is to be resolved in favor of the applicant.").[1]  In discussing the low threshold for severity set out in Newell, the Third Circuit in McCrea stated that any finding that an impairment is "not severe" "should be reviewed with close scrutiny" and are "certain to raise a judicial eyebrow." Id. at 360–61 (finding that, notwithstanding that courts should review ALJ determinations at Step Two with "close scrutiny," "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole.") (emphasis added).

The Court finds that the ALJ properly determined that Plaintiff's impairments were "not severe" and is satisfied that the ALJ provided a comprehensive analysis of each of the medically determinable impairments from which Plaintiff suffered. See generally Tr. 15–19.  The ALJ's analysis was supported by extensive citations to the objective medical evidence within the Administrative Transcript. Id.

The ALJ found that Plaintiff had three medically determinable impairments (opioid dependence in remission, status post wart debridements, and status post bilateral bunion surgeries) and one non-medically determinable impairment (lower back pain), but concluded that the impairments or a combination thereof were non-severe. Id. at 15–16.  In so doing, the ALJ carefully considered the medical record in its entirety. Id. at 15–19.  For example, the ALJ considered that Plaintiff's wart was resolved, that the hammertoe remained painful, but that a toe spacer provided relief, and that Plaintiff had successful bunionectomies on both feet. Id. at 18. The ALJ explained that the left foot bunion surgery was without complication and left Plaintiff without pain. Id. at 17.  Similarly, the ALJ noted that the right foot surgery was successful. Id. at

---

[1] "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." SSR 85–28, 1985 SSR LEXIS 19, at *11–12.

8

17–18. Plaintiff had no complaints six days after surgery, and diagnostic studies showed that Plaintiff's hardware was intact, and his bones were correctly positioned. Id. at 18. Indeed, both surgeries resolved Plaintiff's pain and improved his mobility. Id. at 17–18 (the ALJ noted that Plaintiff's "records show that his bilateral bunionectomies essentially resolved as pain. After those surgeries, he reported that his foot pain was no longer significant. Those notes show that he was more mobile than he had been prior to his initial bunionectomy."). Most notably, as cited by the ALJ in her decision, Dr. Del Monte routinely indicated in his treatment notes that Plaintiff was not disabled.[2] Id. at 18 ("Note that the claimant's October 28, 2020 through August 9, 2021 podiatrist treatment notes repeatedly state that the claimant is not disabled."). In addition, the ALJ considered that the state agency experts also found that Plaintiff lacked severe impairments. Id. at 19. The ALJ explains that these findings are consistent with Plaintiff's records, which demonstrate that "surgery improved his functioning, he no longer uses drugs and he no longer undergoes regular wart debridements since late 2020." Id.

Plaintiff argues that the ALJ erred when she considered evidence that Plaintiff 1) used a cane instead of crutches against the advice of his doctor and 2) was not treated with stronger pain medication. The Court disagrees. The ALJ considered that Plaintiff was walking with a cane instead of crutches against his doctor's instructions. Id. at 17, 18. From such information, the ALJ could reasonably conclude that Plaintiff was not as impaired as he claimed to be: otherwise, he would have followed the advice of his doctor to use crutches and keep his weight off his foot. See Thomas v. Comm'r of Soc. Sec., No. 12-6251, 2013 WL 6904071, at *5 (D.N.J. Dec. 31, 2013) ("Failure to follow treatment undermines [Plaintiff's] credibility"). Plaintiff also argues that the ALJ's discounting of the severity of Plaintiff's impairments based on his inability to take stronger

---

[2] While Plaintiff argues that this finding by Dr. Del Monte is an "administrative note" and not "a determination based on the Doctor's examination," he does not provide any citation to support such a conclusion.

9

mediation was "inappropriate" as he is limited to 500 milligrams of Naproxen to treat pain because of his ongoing opioid recovery. But Plaintiff was not taking even the permitted 500 milligrams of Naproxen. See Tr. 18–19. The ALJ referenced that Plaintiff's "most recent podiatrist records show that he was largely described as not being on <u>any current medication</u>, his reports of pain notwithstanding." See id. (emphasis added).

Under the substantial evidence test, the ALJ properly concluded that Plaintiff's claimed impairment or combination of impairments was "not severe" and therefore the Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act.

## IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is hereby **AFFIRMED**.

Date: August 13, 2024                              s/ Madeline Cox Arleo
                                                   **Hon. Madeline Cox Arleo**
                                                   UNITED STATES DISTRICT JUDGE